**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| AUTOSCRIBE CORPORATION | § | |
| | § | |
| Plaintiff | § | Case No. _____ |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| M&A VENTURES, LLC | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Autoscribe Corporation ("Autoscribe" or "Plaintiff") hereby submits this Complaint for patent infringement against Defendant M&A Ventures, LLC ("REPAY" or "Defendant") and alleges, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

### I.    THE PARTIES

1.    Autoscribe is a corporation organized under the laws of the state of Maryland with its principal place of business at 12276 San Jose Blvd, Suite 624, Jacksonville, FL 32223.

2.    M&A Ventures, LLC is a limited liability company organized under the laws of Georgia, with its headquarters at 3 West Paces Ferry Road Suite 200 Atlanta, Georgia 30305.

3.     Defendant can be served through its registered agent: C T Corporation System, 289 S Culver St, Lawrenceville, Georgia 30046-4805.

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

5.     As discussed in greater detail below, Defendant has committed acts of patent infringement in this judicial district, the State of Georgia, and elsewhere in the United States, by making, using, offering for sale, selling, or importing various products or services that infringe Autoscribe's Asserted Patent (defined below).

6.     As mentioned above, Defendant is organized under the laws of Georgia and has a regular and established place of business (its headquarters) in the District at 3 West Paces Ferry Road Suite 200 Atlanta, Georgia 30305.

7.     Additionally, Defendant has customers in the District, including, *e.g.*, Atlanta Autostar.[1]

8.     Additionally, Defendant has previously transferred litigation between the Parties to this district—specifically, *Autoscribe Corporation v. M&A Ventures, LLC* (Case No. 1:24-cv-04282-SCJ).

9.     The Court has personal jurisdiction over Defendant, in part, because

---

[1] https://carloansatlanta.repay.io/portal (last visited December 28, 2025).

Defendant has minimum contacts with the State of Georgia; Defendant has purposefully availed itself of the privileges of regularly conducting business in the State of Georgia; and Autoscribe's causes of action arise directly from Defendant's business contacts and other activities in the State of Georgia, including by virtue of Defendant's infringement in the State of Georgia. More specifically, Defendant is subject to the Court's general jurisdiction, in part, due to its continuous and systematic contacts with the State of Georgia (including because it is organized under the laws of Georgia and because it maintains its headquarters in Atlanta such that it is at home in the state of Georgia and in this District). Further, Defendant is subject to the Court's specific jurisdiction, in part, because Defendant has committed patent infringement in the State of Georgia and because Defendant has previously transferred litigation between the Parties to this District and because Defendant has a place of business in the State of Georgia (its headquarters) such that assertion of personal jurisdiction is reasonable and fair.

10.    Venue is proper in this judicial District under 28 U.S.C. § 1400(b) because Defendant resides in this District and because Defendant has committed patent infringement in the District and has a regular and established place of business in the District, as discussed above.

### III.    BACKGROUND

11.    Fraud in credit card and other financial transactions is a major problem, particularly in the online marketplace. Considerable resources are devoted to securing credit card and other account information provided to online merchants by payers. A single breach of security incident can compromise millions of credit card accounts, and such breaches are reported on a regular basis. As such, customers' financial data are sensitive in nature and are subject to strict regulations. Companies that fail to adequately protect customers' credit card data may face significant legal and regulatory consequences.

12.    Autoscribe is a leading financial services company and payment processor, currently processing more than $2 billion in transactions annually and servicing thousands of financial institutions and corporate billers across the nation. As part of its mission, Autoscribe has invested significant resources and capital into developing new technologies to facilitate transactions and assist billers in meeting their compliance needs while minimizing costs and complexity.

13.    Autoscribe has protected these technologies with a robust and growing patent portfolio.

14.    On November 4, 2025, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 12,462,234 ("the '234 Patent" or "the Asserted Patent"), titled "Processing a payment, by a secure

computing system, from a payer to a payee operating a merchant computing system," a copy of which is attached hereto as **Exhibit 1**. The Asserted Patent is valid and enforceable.

15.    The Asserted Patent is directed to "systems and methods for obtaining and using account information to process financial payments."

16.    Autoscribe is the original applicant and the sole and exclusive owner of all rights, title, and interest in the Asserted Patent, including the sole and exclusive right to prosecute this action, to enforce the Asserted Patent against infringers, to collect damages for past, present and future infringement of the Asserted Patent, and to seek injunctive relief as appropriate under the law.

17.    Autoscribe has complied with any marking requirements under 35 U.S.C. § 287 with regard to the Asserted Patent.

18.    Defendant is a financial technology company that mainly provides payment processing services and solutions. In 2022, it processed approximately $25.7 billion of card payments and generated approximately $280 million in annual revenues. Most of the revenues are derived from volume-based payment processing fees and other related fixed per transaction fees.

19.    As discussed in greater detail below, Defendant provides processing solutions, including its "Payment API," that are covered by the Asserted Patent.

20.    Defendant competes directly against Autoscribe, including through its

"Payment API," causing Autoscribe to lose significant profits.

21.    Accordingly, Defendant's infringement, as described below, has injured, and continues to injure Autoscribe.

### IV.    COUNT I: INFRINGEMENT OF THE ASSERTED PATENT

22.    Autoscribe incorporates each of the allegations of paragraphs 1–21 above.

23.    Defendant has directly infringed and continues to directly infringe the Asserted Patent by, for example, making, using, offering to sell, selling, and/or importing into the United States, without authority, products or services that practice one or more claims of the Asserted Patent.

24.    Defendant is not licensed or otherwise authorized to make, use, offer for sale, sell or import any products or services that embody the inventions of the Asserted Patent in the United States.

25.    Defendant has and continues to directly infringe one or more claims of the Asserted Patent, including, for example, claim 1, either literally or under the doctrine of equivalents, by performing, or directing or controlling the performance of, or by forming part of a joint enterprise that performs, every step of the claimed method in violation of 35 U.S.C. § 271.

26.    Defendant's infringing services include, for example, the services Defendant provides through its "Payment API," and through the "Payrazr" service,

as well as any other similar methods performed by Defendant (collectively, the "Infringing Methods"), including the first transaction and all following transactions performed with financial account information gathered using the infringing services.

27.     For example, Representative Claim 1 of the Asserted Patent claims:

A method of processing a payment transaction from a payer to a payee, the method being performed by one or more secure servers, the method comprising:

> providing, by the one or more secure servers to a merchant server providing a webpage to a payer computing system used by the payer, an application programming interface (API) that:
>
> provides financial account registration and token retrieval functions that can be executed to process the payment transaction;
>
> provides access to the financial account registration and token retrieval functions to the merchant server;
>
> receives, from the merchant server via the API, at least one data element associated with the payer and a payment amount from the payer to the payee;
>
> authenticates the payee; and
>
> executes the financial account registration function, upon initiation by the merchant server, by:
>
>> generating a uniform resource locator (URL), for establishing an encrypted connection via the internet between the secure server and the payer computing system, the URL comprising either: a dynamic URL generated by the secure server for the payer and the payee; or a static URL and a hypertext transport protocol (HTTP) parameter used by the secure server to identify the payer and the payee;

establishing the encrypted connection, in response to an HTTP request for the generated URL, between the secure server and the payer computing system;

outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to render a financial account registration request form that provides functionality for the payer to provide sensitive financial account information associated with a financial account; and

outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to encrypt the sensitive financial account information provided by the payer and transmit the encrypted financial account information to the secure server, via the encrypted connection;

receiving the sensitive financial account information provided by the payer via the encrypted connection;

storing the sensitive financial account information in a secure storage location and performing each software process required to maintain compliance with one or more information security standards;

executing a token retrieval function, upon initiation by the merchant server via the API, by:

providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant server; and

processing the payment transaction using the sensitive financial account information, without providing the sensitive financial account information to the merchant server and without providing the non-sensitive electronic data token to the payer, by generating and transmitting an electronic request requesting that at least a portion of the payment amount from the financial account be forwarded to the payee.

28.    Through its Payment API, Defendant performs (either itself, or by directing or controlling others to perform, or as part of a joint enterprise) a method of processing a payment transaction from a payer to a payee, the method being performed by one or more secure servers and meeting every element of Claim 1. The figure below is an excerpt from Defendant's documentation providing an overview of the purpose of the Payment API:[2]



**Alliance Financing**

This collection was created for {{Merchant Name}} to connect to REPAY's Platform for channels like SMS, IVR, Mobile and other external payments and payment management.

**REPAY API**

This collection contains the API requests that allow for interaction with the REPAY API which can be used for iFrame, payment level api to populate our reporting, channels like SMS, IVR, Mobile etc.

**Payment API**

The REPAY API is a full collection of endpoints that supports everything from provisioning users to making payments.

This folder will contain calls for unteracting with the service in the most ideal way to make payments both via token and sending full card data so that any application can send payment data via API completely OR by using our hosted checkout forms via iframe or other embedded solutions or redirects.

29.    Defendant provides, by the one or more secure servers to a merchant

---

[2] https://www.postman.com/repay-api-nation/workspace/repay-api-nation-s-public-workspace/documentation/9781366-91da388b-d862-4980-a2ba-2aca6d0420cb (last visited July 26, 2023).

server providing a webpage to a payer computing system used by the payer, an application programming interface (API). This is shown by, *e.g.*, the following excerpts from Defendant's documentation for its Payment API:[3]



30.    It provides financial account registration and token retrieval functions that can be executed to process the payment transaction. This is shown by, *e.g.*, the functions described in the "Card Payment" folder of the "Hosted Payments" section of the Payment API documentation:[4]

---

[3] *Id.*
[4] *Id.* at "Hosted Payments" / "Card Payment" (last visited July 26, 2023).



31.    It provides access to the financial account registration and token retrieval functions to the merchant server. This is shown by, *e.g.*, the "calls" described in the "Card Payment" folder of the "Hosted Payments" section of the Payment API documentation:[5]



32.    It receives, from the merchant server via the API, at least one data element associated with the payer and a payment amount from the payer to the payee. This is shown by, *e.g.*, the "amount" and "customer_id" in the "Get One-Time Use URL" portion of the "Card Payment" folder of the Payment API documentation:[6]

---

[5] https://www.postman.com/repay-api-nation/workspace/repay-api-nation-s-public-workspace/documentation/9781366-91da388b-d862-4980-a2ba-2aca6d0420cb (last visited July 26, 2023).

[6] *Id.* at "Hosted Payments" / "Card Payment" (last visited July 26, 2023).



33.    It authenticates the payee. This is shown by, *e.g.*, the "Authorization" request header in the "Card Payment" folder of the Payment API documentation:[7]

---

[7] *Id.*



34.    It executes the financial account registration function, upon initiation by the merchant server, by:

　　　a. (i) Generating a uniform resource locator (URL), for establishing an encrypted connection via the internet between the secure server and the payer computing system, the URL comprising either: a dynamic URL generated by the secure server for the payer and the payee; or a static URL and a hypertext transport protocol (HTTP) parameter used by the secure server to identify the payer and the payee. This is shown by, *e.g.*,

13

the "one-time use URL" described in the "Card Payment" folder of the

Payment API documentation:[8]





b. (ii) Establishing the encrypted connection, in response to an HTTP

---

[8] *Id.*

request received from the merchant server for the generated URL, between the secure server and the payer computing system. This is shown by, *e.g.*, the description of the "one-time use URL" in the "Card Payment" folder of the Payment API documentation:[9]



## POST  2nd -- Get One-Time Use URL    Open Request→

https://{{subdomain}}.repay.io/checkout/merchant/api/v1/checkout-forms/{{checkout-form.id-card}}/paytoken

This endpoint returns a URL that may be used once and will remain active for a period of time to either embed in a host application or the user is redirected to this URL, provides the requite information to store payment info and then can be loaded automatically back to the host application via a callback URL or can be allowed to exit the process once paymnt is completed.

| Field Name | Description | Example Data | Required or Optional |
|---|---|---|---|
| amount | Payment Amount | 100.25 | Required |
| customer_id | Contains the unique customer identification number | 1023, 01-321 | Required |
| transaction_type | Designates the transaction call type | auth, sale, scheduled_sale | Required |
| Source | Identity of the call to Repay.io | YourInstitutionName | Required |

c. (iii) Outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to render a financial account registration request form that provides functionality for the payer to provide sensitive financial account information associated with a financial account. This is shown by, *e.g.*, the description of the

---

[9] *Id.*

purpose of the "Card Payment" folder and the description of the "Checkout Form":[10]

## Card Payment

This folder contains the calls necessary to request a one time use url to send a user to for entering full card data on our hosted page to make AND make a payment vs just storing it with a 0.00 auth (previous call)

## POST  1st -- Get Checkout Form ID                          Open Request→

https://{{subdomain}}.repay.io/checkout/merchant/api/v1/checkout

## Getting the proper checkout form

When making any payment to REPAY one of the most important items to account for is how the payment, payment method, and customer will all be segemented for the merchant. There may be minimal routing of transacitons for a merchant or several scenarios that require REPAY's rule engine to be used.

To accomodate all merchants it is a *best* preactice to dynamically check REPAY for the proper checkout form to use for each transaction. At a minimum that means passing some data point to this endpoint.

The body of this request is an example that would allow us to return unique checkout forms based on the payment method type and Source of a transaciton; for exmaple we might require cvv for a Source of "customer portal"; where for "merchant portal" we do not (though it is best to aways require cvv).

Additionally as an example we might allow a Source of "merchant portal" to edit the amount of a payment on the REPAY form where this value is read only if the Source of "customer portal" is set (each Source will return a different id)

    d. (iv) And outputting instructions to the payer computing system, in response to the HTTP request for the generated URL, to encrypt the sensitive financial account information provided by

---

[10] https://www.postman.com/repay-api-nation/workspace/repay-api-nation-s-public-workspace/documentation/9781366-91da388b-d862-4980-a2ba-2aca6d0420cb (last visited July 26, 2023); *Id.* at "Hosted Payments" / "Card Payment" (last visited July 26, 2023).

the payer and transmit the encrypted financial account information to the secure server via the encrypted connection. This is shown by, *e.g.*, the same portions of the Payment API documentation discussed in the previous paragraph and by the "one-time use URL":[11]



35.    Defendant receives the sensitive financial account information provided by the payer via the encrypted connection. This is shown by, *e.g.*, the same portions of the Payment API documentation discussed in the previous paragraph and by the description of the "Get One-Time Use URL" portion of the "Card Payment" folder of the Payment API documentation:[12]

---

[11] *Id.*

[12] *Id.*



36.    Defendant stores the sensitive financial account information in a secure storage location and performs each software process required to maintain compliance with one or more information security standards. This is shown by, *e.g.*, the description of "Hosted Payments" in the Payment API documentation:[13]

---

[13] https://www.postman.com/repay-api-nation/workspace/repay-api-nation-s-public-workspace/documentation/9781366-91da388b-d862-4980-a2ba-2aca6d0420cb (last visited July 26, 2023).

## Hosted Payments

This folder contains requests that ultimately return a one-time use URL that users can be directed to in-line or can be embedded in an application but allows REPAY to capture the payment details and lower the PCI scope of the connecting application.

If it is determined users should be directed to the URL, a callback URL can be set and auto-loaded so the user is returned to the parent application.

Finally webhook samples are present with instructions on when in the processes they can be reeived and if customized will be updated samples of the customized data.

37.    Defendant executes a token retrieval function, upon initiation by the merchant server via the API, by: providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant server; and processing the payment transaction using the sensitive financial account information, without providing the sensitive financial account information to the merchant server and without providing the non-sensitive electronic data token to the payer, by generating and transmitting an electronic request requesting that at least a portion of the payment amount from the financial account be forwarded to the payee. For example, the "tokens" described in the Payment API documentation show "a non-sensitive electronic data token," and the "Card Payment" folder in the documentation shows that it processes a payment (or that a payment is processed under Defendant's direction or control or as part of a joint enterprise with Defendant):[14]

---

[14] *Id.*





**Card Payment**

This folder contains the calls necessary to request a one time use url to send a user to for entering full card data on our hosted page to make AND make a payment vs just storing it with a 0.00 auth (previous call)

38.     To the extent any step of a claim is performed by some party other than the Defendant (*e.g.*, to the extent any aspect of "processing the payment transaction" is performed by third party gateways, core processors, processing platforms, acquiring banks, card brands, or issuing banks), such performance is attributable to Defendant, including because Defendant directs or controls such the third party's performance because the third party is acting as an agent of Defendant or is under contract with Defendant regarding such performance, or because Defendant

conditions the third party's participation in a transaction or receipt of a benefit (including, *e.g.*, the receipt of fees) on such performance. In the alternative, such performance is attributable to Defendant because Defendant forms a joint enterprise with the third party. For example, Defendant has contractual relationships with various third-party gateways, core processors, processing platforms, acquiring banks, and card brands, and to the extent any step of a claim is performed by such entities, it is performed pursuant to their contracts. As another example, Defendant has acquired Electronic Payment Providers, Inc. and Trisource Solutions, LLC, and to the extent any step of a claim is performed by such entities, it is performed under Defendant's direction or control.

39.    Defendant had actual knowledge of the Asserted Patent and the infringement of the same no later than the date of this Complaint.

40.    The acts of infringement by Defendant have caused damage to Autoscribe, and Autoscribe is entitled to recover from Defendant the damages sustained by Autoscribe as a result of Defendant's wrongful acts in an amount subject to proof at trial. The infringement of Autoscribe's exclusive rights under the Asserted Patent by Defendant has damaged and will continue to damage Autoscribe, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

41.    Defendant's infringement of the Asserted Patent has been willful and

continues to be willful. In addition, or in the alternative, at least as early as its receipt of this Complaint, Defendant has had knowledge of the Asserted Patent and written notice of the infringement, and its infringement has been willful at least as of that date. Autoscribe intends to seek discovery on the issue of willfulness and reserves the right to seek a willfulness finding and increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## V.    JURY DEMAND

42.    Autoscribe hereby demands a trial by jury on all issues so triable.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Autoscribe requests entry of judgment in its favor and against Defendant as follows:

a) A declaration that Defendant has directly infringed one or more claims of the Asserted Patent, either literally or under the doctrine of equivalents;

b) An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Autoscribe for Defendant's infringement of the Asserted Patent in an amount according to proof at trial including enhanced damages pursuant to 35 U.S.C. § 284 (together with prejudgment and post-judgment interest), but no less than a reasonable royalty;

c) An order permanently enjoining Defendant, its officers, agents, employees,

and those acting in privity with it, from further direct and/or indirect infringement of the Asserted Patent;

d) An award of costs and expenses pursuant to 35 U.S.C. § 284 or as otherwise permitted by law; and

e) Such other and further relief, whether legal, equitable, or otherwise, to which Autoscribe may be entitled or which this Court may order.

Dated: February 5, 2026                     Respectfully submitted,

                                            /s/ David S. Moreland
                                            David S. Moreland
                                            Georgia Bar No. 521998

                                            MILLER & MARTIN PLLC
                                            1180 West Peachtree Street, NW
                                            Suite 2100
                                            Atlanta, Georgia 30309
                                            (404) 962-6412 (Tel)
                                            (404) 962-6347 (Fax)
                                            david.moreland@millermartin.com

                                            AHMAD, ZAVITSANOS & MENSING,
                                            PLLC

                                            Jason McManis (*Pro Hac Admission To Be Applied For*)
                                            Texas State Bar No.: 24088032
                                            Colin Phillips (*Pro Hac Admission To Be Applied For*)
                                            Texas State Bar No.: 24105937
                                            Thomas DelRosario (*Pro Hac Admission To Be Applied For*)
                                            Texas State Bar No.: 24110645
                                            Chun Deng (*Pro Hac Admission To Be Applied For*)

Texas State Bar No.: 24133178
Sean Healey (*Pro Hac Admission To Be Applied For*)
Texas State Bar No.: 24142997

1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101 (Tel)
jmcmanis@azalaw.com
cphillips@azalaw.com
tdelrosario@azalaw.com
cdeng@azalaw.com
shealey@azalaw.com

*Attorneys for Plaintiff Autoscribe Corporation*